IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Highway 41, LLC, | ) Case No. 11-22753 |
| | ) |
| | ) Hon. Jack B. Schmetterer |
| Debtor in Possession | ) |

**AGREED FINAL ORDER AUTHORIZING USE OF CASH
COLLATERAL AND GRANTING REPLACEMENT LIENS AND ADEQUATE
PROTECTION TO BANK OF AMERICA, N.A.**

This matter having come before the Court on a noticed final hearing (the "**Final Hearing**") on the *Debtor's Motion for Authority to Use Cash Collateral, and for Other Relief* (Docket No. 10) (the "**Cash Collateral Motion**") filed by Highway 41, LLC, the debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Case**"), seeking authority to use the cash collateral of Bank of America, N.A. as successor in interest by merger with LaSalle Bank N.A (the "**Bank**");[1] and the Debtor and the Bank having agreed to the Debtor's use of the Bank's cash collateral on an interim basis pursuant to prior interim cash collateral orders (including Docket Nos. 24, 36, and 41) (the "**Interim Orders**"); the Debtor and the Bank stipulate and agree as follows:

A. As of May 31, 2011, the date on which the Case commenced (the "**Petition Date**"), the Debtor was indebted to the Bank for certain outstanding loans (the "**Loans**") having an approximate principal balance of $3,002,377.17, plus accrued interest of no less than $90,531.13,

---

[1] Capitalized terms not otherwise defined herein or in the Bankruptcy Code shall have the meaning ascribed thereto in the Motion.

Final Cash Collateral Order Highway 41 Bank of America_1.DOC

plus accrued late fees and other fees and charges (including attorneys fees) of no less than $33,925.88, for an aggregate total amount then due of no less than $3,126,834.18 (the "**Pre-petition Indebtedness**"). The Debtor acknowledges and agrees that the Debtor has no causes of action against the Bank and that the Pre-petition Indebtedness is not subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under title 11 of the United States Code (the "**Bankruptcy Code**" or "**Code**"), applicable non-bankruptcy law, or otherwise.

B. The Loans are evidenced and secured by certain documents (collectively, as each has been modified and amended from time to time, the "**Loan Documents**"), including but not limited to all ancillary documents, instruments and agreements described in, related to or made in connection with the documents described below:

1. LaSalle Bank National Association ("**LaSalle**"), now Bank, made a loan to Debtor in the original principal amount of $3,240,000.00, pursuant to that certain promissory note dated December 31, 2007 (the "**Note**"). On or about the same date, the parties executed that certain business loan agreement (the "**Business Loan Agreement**").

2. The Debtor's obligations under the Loan Documents are secured by that certain mortgage executed by Debtor on or about April 28, 2003 in favor of LaSalle (now Bank) and which was recorded on May 12, 2003 at the Lake County Recorder's Office at Document No. 5226524 (the "**First Mortgage**"). On or about December 31, 2007, for good and valuable consideration, which included LaSalle's agreement to extend credit, Highway 41 executed a modification of mortgage in

2

favor of LaSalle, which was recorded April 28, 2008 at the Lake County Recorder's Office at Document No. 043218540004 (the "**Modification of Mortgage**" and, collectively with the First Mortgage as such documents have been modified or amended from time to time, the "**Mortgage**").

3. The real property that is subject to the Mortgage is commonly known as 298770-29900 North U.S. Highway 41, Lake Bluff Illinois (the "**Real Property**"), where Debtor conducts its business as landlord to certain other commercial enterprises. The Real Property is further encumbered by that certain assignment of rents (the "**Assignment of Rents**") granted by Debtor to Bank, that was executed on or about April 23, 2003 and recorded on May 12, 2003 at the Lake County Recorder's Office at Document No. 5226525. Pursuant to the Assignment of Rents, Debtor conveyed to Bank all of its rights, title, and interest in and to the rents for the Real Property, and also granted same to secure all of Debtor's indebtedness under the Loan Documents

4. Each of the Business Loan Agreement, the Mortgage, and the Assignment of Rents states that expenses, including Bank's attorney's fees and expenses for bankruptcy proceedings, become part of the indebtedness under the Loan Documents secured by the Mortgage and Assignment of Rents.

5. Bank and LaSalle have performed all of their obligations and conditions precedent under the Loan Documents and Mortgage. Debtor defaulted under the Loan Documents by failing to make full payments due and owing after September 30, 2010.

6.  As of the Petition Date, the principal amount due to Claimant under the Loan Documents was $3,002,377.17. Pursuant to the Loan Documents, from and after September 30, 2010, the interest charged on such note increased from the non-default interest rate of 5.44% to the default rate of 7.44%. As of the Petition Date, the interest due to Claimant from Debtor under the Loan Documents was $90,531.13. Claimant has incurred no less than $33,925.88 in reasonable attorneys' fees and expenses in attempting to collect the amounts described above due to Claimant from Borrower, including fees and expenses for bankruptcy proceedings. Adding such fees to the principal, interest, charges, and fees owed as of the Petition Date under the Loan Documents brings the total amount due to an amount no less than $3,126,834.18. All of such amount is secured by the Mortgage and the Assignment of Rents.

C.  The Pre-petition Indebtedness is an allowed secured claim against Debtor in the amount of $3,126,834.18 (plus reasonable additional attorney's fees and costs through the date the Pre-petition Indebtedness is paid indefeasibly to Bank or the date a plan is confirmed in the Case, whichever occurs earlier), which is exclusive of amounts to which Bank is entitled pursuant to section 506(b) of the Bankruptcy Code, which include accrued and accruing: (a) interest at the rates of interest described above; (b) all fees, costs, expenses, and other charges due or coming due under the Loan Documents or in connection with the Pre-petition Indebtedness (regardless of whether such fees, costs, interest and other charges are included in any Budget (as defined herein); and (c) all costs and expenses at any time incurred by Bank in connection with: (i) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (ii) the legal representation of Bank in the Case, including in

4

defending any Challenge (as defined below), but only to the extent allowable under the Loan Documents and section 506(b) of the Bankruptcy Code (the "**Allowable 506(b) Amounts**"). The Bank has and retains all claims against the Debtor arising out of the Loan Documents, including for:

1. The Pre-petition Indebtedness plus all Allowable 506(b) Amounts;

2. Post-petition interest, which accrues under the Loan Documents at the default interest rate of 7.44%, as described in the Loan Documents, and as of the Petition Date equaled $620.49 per day, and which interest will continue to accrue through payment in full of the Pre-Petition Indebtedness to the fullest extent allowed as an Allowable 506(b) Amount; and

3. Reimbursable and accruing charges including bank fees and out of pocket charges for legal fees and costs incurred by the Bank on and after the Petition Date to the fullest extent allowed as an Allowable 506(b) Amount.

D. Any and all rent obtained by Debtor from all of its operations or which are proceeds of any interest in the Bank Collateral constitute "cash collateral" of the Bank under section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"). The Bank Collateral extends to, and the Pre-petition Indebtedness is secured by, the Cash Collateral pursuant to section 552(b) of the Code.

E. The Debtor agrees to make the following monthly payments to the Bank during the Case: all cash collected from rents paid by tenants of Debtor from the date of Debtor's most recent payment to the Bank through the final day each month (the "**Monthly Period**"), minus the aggregate amount of all disbursements made over the same period, such that the amount of one thousand dollars ($1,000.00) is left in the Debtor's bank account upon such payment (the

"**Monthly Payments**"). The Monthly Payments shall be made to Bank on or before the 4th day of the month following the period covered. Each Monthly Payment shall be accompanied by a complete report (each a "**Monthly Payment Report**") of all cash receipts of Debtor and all disbursements of Debtor over the Monthly Period. The date on which the Debtor's authorization to use Cash Collateral terminates shall constitute the final day of the final Monthly Period. The Debtor agrees to pay to Bank, within ten days after the final date of the final Monthly Period, all cash collected from rents paid by tenants of Debtor from the date of Debtor's most recent payment to the Bank through the final date of the final Monthly Period, minus the aggregate amount of all disbursements made over the same period, such that the amount of zero dollars ($0.00) is left in the Debtor's bank account upon such payment (the "**Final Monthly Payment**").

F.    Debtor represents that the budget attached hereto as Exhibit "A", or as such Budget may be modified in writing with the prior written consent of the Bank, which consent shall not be unreasonably withheld (the "**Budget**") contains a good faith estimate of all expenses that are reasonable and necessary for the operation of its business and the preservation of the Cash Collateral and the Bank Collateral (collectively, the "**Collateral**") through the period for which the Budget runs, and therefore includes all estimated amounts potentially chargeable to Bank under section 506(c) of the Bankruptcy Code. Accordingly, Debtor hereby waives any claim against Bank pursuant to section 506(c) of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) applicable to the Collateral. Debtor acknowledges and agrees that, absent further order of this Court, it shall not use any of the Cash Collateral for any purpose other than the specific expenses identified in the Budget or as such Budget may be modified in writing with the prior written consent of the Bank and in accordance with the terms of this Order, except as the Bank may otherwise agree in writing

G. As protection of the interest of the Bank in the Collateral, but not necessarily full adequate protection within the meaning of sections 361 and 363 of the Bankruptcy Code, and for Debtor' use of Cash Collateral and the potential diminution in value thereof, the Debtor has agreed to provide the Bank with the Replacement Liens on the Replacement Collateral (as those terms are defined below).

H. The Bank consents to the terms of this Order and is entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of its interests in the Collateral from and after the Petition Date (the "**Collateral Decrease Amount**"). Debtor represents that under the circumstances of this Case, this Order is a fair and reasonable response to Debtor's request for Bank's consent to the use of Cash Collateral and the entry of this Order is in the best interest of Debtor's estate and its creditors.

**THE COURT HEREBY FINDS**:

I. <u>Petition Date</u>. On the Petition Date the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

II. <u>Debtor in Possession</u>. The Debtor has continued in the management and possession of its business and property as debtor-in-possession pursuant to section 1107 and 1108 of the Bankruptcy Code. No Official Committee of Unsecured Creditors has been appointed in this Case.

III. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 & 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 & 1409.

IV. <u>The Bank's Pre-petition Claim</u>. The Bank asserts and the Debtor acknowledges that, as of the Petition Date, the Bank holds an allowed secured claim against the Debtor in the amount of $3,126,834.18 (plus reasonable additional attorney's fees and costs through date the date the Pre-petition Indebtedness is paid indefeasibly to Bank or the date a plan is confirmed in the Case, whichever occurs earlier), which is exclusive of accrued and accruing Allowable 506(b) Amounts and that all cash now or hereinafter in the possession of the Debtor constitutes "cash collateral" of the Bank within the meaning of section 363 of the Bankruptcy Code.

**Based upon the foregoing stipulations of the Debtor and the Bank, as well as the findings and conclusions, the Cash Collateral Motion, and the record before the Court with respect to the Motion; the Debtor and the Bank having agreed to the Debtor's use of the Cash Collateral on a final basis pursuant to the terms of this Order; the Final Hearing having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(b)(2); due and proper notice of the Motion and the Final Hearing having been given to all parties entitled thereto; no objection to the Motion having been filed or served by any creditor or party in interest; and good and sufficient cause appearing therefore,**

**IT IS HEREBY ORDERED that:**

1. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Order, the Debtor may use Cash Collateral to pay actual, ordinary, and necessary expenses set forth in the Budget, or as such Budget may be modified in writing with the prior written consent of the Bank, which consent shall not be unreasonably withheld, including the Monthly Payments subject to such payments being reclassified and reallocated to principal payments in the event that it is later determined that the Bank is not entitled to receive interest on its Pre-petition Indebtedness or reimbursement of legal fees as Allowable 506(b) Amounts. Absent further order

of Court or the consent of the Bank, the Debtor shall not be authorized to use Cash Collateral to pay any items in excess of 115% of the total monthly cash disbursements and expenses amounts set forth in the Budget.

2. <u>Replacement Liens</u>. As protection of the interest of the Bank in Cash Collateral, but not necessarily adequate protection within the meaning of sections 361 and 363 of the Bankruptcy Code, for Debtor's use of Cash Collateral and the potential diminution in value thereof, and as additional security for the Pre-petition Indebtedness, the Bank is granted, to the same and extent and priority as the Bank's valid pre-petition security interests in the Bank Collateral, replacement security interests in and liens upon all of Debtor's property and assets, of any kind or nature whatsoever, whether now owned or hereafter acquired by the Debtor, including but not limited to, all assets of Debtor like those included among Bank Collateral, including all proceeds, products, rents and/or profits thereof and including Avoidance Recoveries which are included within the scope of Bank Collateral (such collateral, collectively, the "**Replacement Collateral**," and such replacement security interests and liens, the "**Replacement Liens**"). The Replacement Liens shall be enforceable in an amount equal to the aggregate post-petition diminution (whether as a result of physical deterioration, consumption, use, shrinkage, decline in market value or otherwise) in the value of the interest of the Bank in the Bank Collateral, as such Bank Collateral existed as of the Petition Date, including, without limitation, the post-petition diminution in value of the Bank Collateral resulting from Debtor's use of Cash Collateral as provided herein. Without limiting the generality of the foregoing, the Bank's liens on Replacement Collateral: (a) shall be subject only to non-avoidable, valid, enforceable and perfected liens and security interests in the Pre-petition Bank Collateral and Replacement Collateral of Debtor that existed on the Petition Date; (b) shall at all times be senior to the rights

of Debtor; and (c) shall be senior to any security interest in or lien on the Replacement Collateral which is avoided or otherwise preserved for the benefit of Debtor's estate under section 551 or any other provision of the Bankruptcy Code.

3. <u>Validity and Perfection of Replacement Liens</u>. The Replacement Liens on the Replacement Collateral granted to the Bank shall be, and hereby are, deemed valid, enforceable and duly and automatically granted and perfected and recorded under all applicable federal or state or local or other laws, statute, rule or regulation, and no notice, filing, mortgage recordation, possession, further order or other act shall be required to effect such grant or perfection of such Replacement Liens; provided, however, that notwithstanding the provisions of section 362 of the Bankruptcy Code, the Bank may, at its sole option, file or record or cause Debtor to execute, file or record such UCC financing statements, notices of liens and security interest, mortgages, or other similar documents as the Bank may require.

4. <u>The Debtor's Obligations</u>. The Debtor shall maintain insurance of the kind covering the Bank Collateral, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the businesses in which the Debtor is engaged. The Debtor shall comply with the stipulations and agreements with the Bank as described in this Order. So long as this Order is in effect, the Debtor shall not attempt to grant any entity, other than the Bank, a lien or security interest in any assets of the Debtor, including Cash Collateral and all other assets subject to the Replacement Liens, pursuant to section 364 of the Bankruptcy Code or otherwise, having priority over or parity with the Bank' secured interests in such assets without the prior express written consent of the Bank.

5.  <u>Debtor Financial Reports</u>.  The Debtor shall promptly provide the Bank with copies of all financial reports made to the Court or to the United States Trustee, including, without limitation, the monthly operating report for the prior month that the Debtor is required to file with the United States Trustee's office, along with all reports of revenues and expenses, and all other reports of financial data given by the Debtor to any other party, or reasonably requested by the Bank.  Without limiting the foregoing, Debtor shall provide the Bank, to the extent available, with: (a) monthly reports which include but are not limited to the Variance Report and Escrow Report (as those terms are defined in the Interim Orders); and (b) all other reports previously required and furnished by the Debtor to the Bank under the Loan Documents.  Without limiting the foregoing, the Debtor shall provide the Bank with copies of any inventories or appraisals or reports conducted or obtained covering any and all personal property and real property of Debtor.

6.  <u>Challenge Rights</u>.  Notwithstanding anything herein to the contrary, any non-debtor party in interest shall have until the 91st day after the entry of this Order, and any trustee or other custodian of the Debtor's property appointed or elected in the Case or any successor case shall have until the 91st day after such appointment or election to commence an adversary proceeding or contested matter (each, a "**Challenge**") that: (a) challenges that validity, extent, perfection, and enforceability of any of the Bank's pre-petition liens and security interests on any Debtor property; or (b) asserts any other claims or causes of action against the Bank.  In no event shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of the Bank under this Order or the Loan Documents pending a ruling on such Challenge.  If no Challenge is timely filed under the terms of this paragraph, then without further order of the Court: (x) the claims, liens and security interests of the Bank shall be

deemed to be allowed for all purposes in the Case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise; (y) the Debtor and its estate shall be deemed to have waived, released and discharged Bank and its officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Pre-petition Indebtedness, the Bank Collateral, the Loan Documents or otherwise; and (z) the other agreements, acknowledgements, releases and stipulations contained in this Order shall be irrevocably binding on the Debtor's estate, and all other parties in interest (including, without limitation, any trustee or other custodian of the Debtor's property appointed or elected in the Case or any successor case).

7. <u>Automatic Stay</u>. The automatic stay of section 362 of the Code shall be modified to the extent necessary to implement the provisions of this Order.

8. <u>Miscellaneous Provisions</u>. The Bank shall be conclusively presumed to have requested adequate protection as of the Petition Date. Nothing contained in this Order shall preclude the Bank from seeking additional or different adequate protection, and this Order is without prejudice to the right of the Bank from seeking to terminate or modify the automatic stay or the right of Debtor and other parties in interest to oppose such relief.

9. Bank shall not be deemed to have suspended or waived any of its rights or remedies under this Order, the Loan Documents, the Pre-petition Indebtedness, the Bankruptcy Code, or applicable non-bankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Bank, as applicable, and directed to Debtor. No failure of Bank to require strict performance by Debtor (or by any Trustee or other successor of Debtor) of any

provision of this Order shall waive, affect or diminish any right of Bank thereafter to demand strict compliance and performance therewith. No delay on the part of Bank in the exercise of any right or remedy under this Order, the Loan Documents, the Pre-petition Indebtedness, the Bankruptcy Code, or applicable non-bankruptcy law shall preclude Bank's exercise of any right or remedy. This Order shall not constitute a waiver by Bank of any of its rights under the Loan Documents, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation their right to later assert: (a) that its interests in the Bank Collateral lack adequate protection within the meaning of sections 362(d) or 363(e) of the Bankruptcy Code or any other provision thereof; or (b) a claim under section 507(b) of the Bankruptcy Code, except that, absent a material change of circumstances, the Bank shall be prohibited from asserting that its interests in the Bank Collateral is not adequately protected if the Debtor is in compliance with this Order and any Budget approved by the Bank.

10. **Additional Cash Collateral.** The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional Cash Collateral if the Debtor determines that the Cash Collateral use authorized by this Order is insufficient.

11. **Immediate Effectiveness of Authority.** The Debtor's authority to use Cash Collateral under this Order shall be effective immediately and shall extend through the term of the Budget (as such Budget may be subsequently extended by agreement between the Debtor and the Bank). To the extent any provision of this Order conflicts with any provision of the Cash Collateral Motion, the provisions of this Order shall control.

12. **Survival.** The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with any order which may be entered in the Case: (a) confirming any chapter 11 plan accepted by the

Bank unless such plan specifically modifies or vacates this Order; (b) converting the Case to a case under chapter 7 of the Code; (c) dismissing the Case; (d) withdrawing of the reference from this Court; or (e) providing for abstention from handling or retaining of jurisdiction of the Case in this Court. The terms and provisions of this Order shall continue in full force and effect until all of the Pre-petition Indebtedness plus any accrued and accruing Allowable 506(b) Amounts are indefeasibly paid in full in cash and discharged.

13. <u>Termination</u>. The Debtor's authorization to use Cash Collateral shall be terminated upon: (a) the dismissal of the Case or the conversion of the Case to a case under chapter 7 of the Bankruptcy Code; (b) the closing of a sale of the Real Property authorized by an order of this Court pursuant to section 363(b) of the Bankruptcy Code; (c) the commencement of a case under any chapter of the Bankruptcy Code in which Gregory Marshall, the principal of the Debtor, or Sarah Marshall (wife of Gregory Marshall), or both, are the debtor; or (d) upon the absence of a filing of a motion to approve a stipulation and order in the Case (the "**Motion to Approve Stipulation**") on or before October 20, 2011 (the "**Stipulation Motion Date**"), with such stipulation and order (i) having been executed by Debtor, Gregory Marshall, Sarah Marshall, and Bank and (ii) relating to the sale of the Real Property pursuant to section 363(b) of the Bankruptcy Code. Bank may, in its sole discretion, agree to extend the Stipulation Motion Date by a writing to the Debtor, including by electronic mail, stating such agreement. The Court shall retain jurisdiction to enforce any term of this Order.

ENTER:

United States Bankruptcy Judge

OCT 13 2011

10/13/11

**AGREED TO:**

| HIGHWAY 41, LLC. | BANK OF AMERICA, N.A. |
|---|---|
| By: _____ | By: _____ |
| One of its attorneys | One of its attorneys |

Vikram R. Barad  
Maxwell Law Group, LLC  
105 W. Adams Street, Suite 3200  
Chicago, IL 60603

Christopher M. Cahill  
Lowis & Gellen LLP  
200 West Adams St., Suite 1900  
Chicago, IL 60606

# EXHIBIT A

## Exhibit A - Budget for Cash Collateral Order

| Tenant # | Rental Amount |
|---|---|
| 1 | $ 1,850.00 |
| 2 | $ 2,000.00 |
| 3 | $ 6,500.00 |
| 4 | $ 27,624.00 |
| 5 | $ 1,250.00 |
| 6 | $ 650.00 |
| 7 | $ 500.00 |

| | |
|---|---|
| Scheduled Rent* | $40,374.00 |
| Other Income | $0.00 |
| **Projected Gross Income** | $40,374.00 |

| Operating Expenses | |
|---|---|
| Accounting | $ - |
| Advertising | $ - |
| Alarm | $50.00 |
| Bank Fees | $0.00 |
| Heating and electricity | $465.00 |
| Gas | $220.00 |
| Maintenance Supplies | $400.00 |
| Auto Insurance | $381.00 |
| Health Insurance | $900.00 |
| Office and Cleaning Supplies | $100.00 |
| Truck Leasing fee | $294.00 |
| Management Fee** | $3,028.05 |
| Legal/professional*** | |
| United States Trustee | $325.00 |
| Misc | $150.00 |
| Repairs | $100.00 |
| Pest | $0.00 |
| Plumbing | $100.00 |
| EstimatedR.E Taxes/Property Insurance Escrow**** | $4,600.00 |
| Telephone | $75.00 |
| Sewer | $100.00 |
| Water | $140.00 |
| **Total Operating Expenses** | **$11,428.05** |

| | |
|---|---|
| **Projected Net Operating Income** | $28,945.95 |

* Scheduled Rent is subject to change
** Mgmt Fee is subject to change (7.5% of rental receipts)
*** Any payment of legal/professional fees must be approved by the Court
**** This disbursement may be subject to rental receipts